UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROBERT LOGAN BERRY, JR.,

Petitioner,

v.

ISIDRO BACA, *et al.*,

Respondents.

Case No. 3:16-cv-00470-MMD-WGC

ORDER

**I.    SUMMARY**

This is a habeas corpus action under 28 U.S.C. § 2254. Before the Court are Robert Berry's counseled amended petition for writ of habeas corpus (corrected image) (ECF No. 25), Respondents' motion to dismiss ("Motion") (ECF No. 28), Berry's opposition (ECF No. 32), and Respondents' reply (ECF No. 33). For the reasons stated below, the Court denies the Motion.

**II.   BACKGROUND**

The Court will give only a quick summary of the case here because the parties are familiar with the procedural history of this case, which the Court described in its order of September 27, 2018. (ECF No. 23.) In the Tenth Judicial District Court of the State of Nevada, Churchill County, Berry pleaded no contest to attempted robbery and being a habitual criminal. (ECF No. 8-22 (Ex. 22).) The location of the attempted robbery was Fox Peak Station, which was on the Fallon Paiute-Shoshone Indian Reservation and owned by the Fallon Tribal Development Corporation, the business division of the Fallon Paiute-Shoshone Tribe. At sentencing, counsel raised the possibility that under state and federal law, jurisdiction for the crime might have been with this Court and not with the state court. (ECF No. 8-24 at 4-5 (Ex. 24 at 3-4).) The state district court rejected the argument. (ECF

No. 8-24 at 10.) In an authorized delayed direct appeal, the Nevada Supreme Court also rejected the argument. (ECF No. 9-29 (Ex. 64).)

**III. DISCUSSION**

    **A. EXHAUSTION**

        **1. Legal standard**

Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

        **2. Discussion**

In both state court and this Court, Berry's ultimate conclusion is that the laws and courts of the United States, not the laws and courts of the State of Nevada, had exclusive jurisdiction over the charged offense. The difference is in Berry's arguments leading to that conclusion. On appeal from the denial of his post-conviction habeas corpus petition, Berry argued that: (1) the offense occurred in Indian country; (2) Berry is not an Indian; and (3) the victim of the attempted robbery was the Fallon Paiute-Shoshone Tribe, not the non-Indian clerk working at the gas station at the time of the attempted robbery. In the sole ground of the counseled federal amended petition (ECF No. 25), Berry argues that: (1) the offense occurred in Indian country; (2) Berry is not an Indian; and (3) that the attempted robbery *affected*, *involved*, and was against the Fallon Paiute-Shoshone Tribe. (ECF No. 25 at 7-9.) Respondents argue that the addition of the emphasized words makes the ground unexhausted. The Court disagrees.

    In the appeal from the denial of the state post-conviction petition, Berry argued:

    Additionally, the money that would have been stolen, had the commission of the alleged criminal act been successful, belonged to the Fox Peak Station. Therefore, Fox Peak Station, a.k.a. the Fallon Paiute-Shoshone Tribe, would have bore the financial loss had the commission of this alleged offense been successful.

(ECF No. 9-25 at 14 (Ex. 60 at 13).) In the counseled amended petition, Berry quoted that state-court brief, and then added:

> This alleged crime—an attempted robbery meant to steal money from an Indian-owned store—"affected," "involved," and was against Indians.

ECF No. 25, at 8-9 (footnotes omitted). The substance of the claim is the same—the real intended victim of the attempted robbery was the Fallon Paiute-Shoshone Tribe, not the clerk working at the gas station at the time. The addition of words like "affected" and "involved" do not change the substance of the claim presented to the state courts.

Moreover, in the appeal from the denial of the state post-conviction petition, Berry based his argument upon federal law, including *Williams v. United States*, 327 U.S. 711 (1946). (ECF No. 9-25 at 12 (Ex. 60 at 11).) In *Williams*, the Supreme Court stated:

> *While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians*, the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian.

*Id.* at 714 (emphasis added, footnotes omitted). In a footnote supporting the emphasized clause, the Court cited *People of the State of New York ex rel. Ray v. Martin*, 326 U.S. 496 (1946). There, the Court stated:

> While Section 2145 of the Revised Statutes [now repealed] has been held applicable in territories to crimes between whites and whites which do not *affect* Indians, the [*United States v. McBratney*, 104 U.S. 621 (1881)] line of decisions stands for the proposition that States, by virtue of their statehood, have jurisdiction over such crimes notwithstanding Section 2145.

*Ray*, 326 U.S. at 500 (emphasis added, footnotes omitted). The citation to *Williams* alerted the Nevada Supreme Court to the governing law on the matter, which does use the word "affect."

For these reasons, the Court finds that Berry has exhausted his state-court remedies for the sole ground in the counseled amended petition.

///

///

///

3

## B. COGNIZABILITY

### 1. Legal standard

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

### 2. Discussion

Respondents argue that the Nevada Supreme Court determined under state law that it had jurisdiction, and that, even if the Nevada Supreme Court was not correct, this Court cannot grant relief based upon an error in state law. In its decision, the Nevada Supreme Court relied upon Nev. Rev. Stat. § 41.430.

As the Court has explained in its prior order of September 27, 2018 (ECF No. 23), under Public Law 83-280, 67 Stat. 588 (1953) ("Public Law 280"), Congress gave states such as Nevada the ability to assume jurisdiction of civil and criminal actions in Indian country. In response, Nevada enacted Nev. Rev. Stat. § 41.430, which assumed Public Law 280 jurisdiction, subject to the governor excluding areas by proclamation. The governor did exclude Churchill County from Nev. Rev. Stat. § 41.430.

In 1968, Congress enacted 25 U.S.C. § 1321, which did not affect states' existing Public Law 280 jurisdiction, but required any state's future assumption of Public Law 280 jurisdiction to have the consent of the affected Indian tribe. The same year, Congress also enacted 25 U.S.C. § 1323, which allowed states to retrocede Public Law 280 jurisdiction back to the United States.

In 1973, the Nevada Legislature amended the law in response to the 1968 congressional enactments. Nev. Rev. Stat. § 41.430 now states, with footnotes omitted:

> 1. Pursuant to the provisions of section 7, chapter 505, Public Law 280 of the 83d Congress, approved August 15, 1953, and being 67 Stat. 588, and sections 401 to 403, inclusive, of Title IV, Public Law 284 of the 90th

4

Congress, approved April 11, 1968, and being 82 Stat. 78, et seq., the State of Nevada does hereby assume jurisdiction over public offenses committed by or against Indians in the areas of Indian country in Nevada, as well as jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country in Nevada, subject only to the conditions of subsections 3 and 4 of this section.

2. Any tribal ordinance or custom adopted by an Indian tribe, band or community in the exercise of any authority possessed by it shall, if not inconsistent with any applicable civil law of this state, be given full force and effect in the determination of civil causes of action pursuant to this section.

3. This section applies to all areas of Indian country within this state wherein the Indian tribe occupying any such area has consented to the continuation of state jurisdiction over such area in the manner provided in sections 6 to 14, inclusive, of chapter 601, Statutes of Nevada 1973, or has consented to the assumption of state jurisdiction over such area in the manner provided by section 406 of Title IV of Public Law 284 of the 90th Congress, approved April 11, 1968, and being 82 Stat. 80.

4. This section does not apply to any area of Indian country within this state wherein the Indian tribe occupying any such area has failed or refused to consent to the continuation of state jurisdiction over such area in the manner provided in sections 6 to 14, inclusive, of chapter 601, Statutes of Nevada 1973; and the State of Nevada hereby recedes from and relinquishes jurisdiction over any such area.

As the Court noted in its prior order, the Fallon Paiute-Shoshone Tribe has not given its consent to Nevada assuming Public Law 280 jurisdiction over its reservation. By its terms, Nev. Rev. Stat. § 41.430 appears to be inapplicable to Berry's case.

The Nevada Supreme Court had two reasons why it found that the state courts had jurisdiction. The Court addresses each in turn.

The Nevada Supreme Court offered its first reason as follows:

First, NRS 41.430 is not at issue because neither appellant nor the store clerk is Indian. We reject appellant's contention that the tribal members, as owners of Fox Peak Station, were victims of the attempted robbery. *See* NRS 200.380(1) (defining robbery, in pertinent part, as "the unlawful taking of personal property from the person of another, or the presence, against his or her will, by means of force or violence . . ."); *see also* NRS 193.330(1) (defining attempt).

(ECF No. 9-29 at 2-3 (Ex. 64 at 1-2).) That analysis did not account for a few federal-law issues. First, the United States has exclusive jurisdiction over crimes that non-Indians commit in Indian country against Indians:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

18 U.S.C. § 1152.

Second, the Assimilative Crimes Act ("ACA") provides for adopting state statutes where federal statutes are silent:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Congress has enacted a law punishing robbery and attempted robbery:

> Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

18 U.S.C. § 2111. Nevada, of course, also has enacted a law punishing robbery:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person, or the person of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.
>
> The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
> 2. A person who commits robbery is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years.

///

Nev. Rev. Stat. § 200.380. Nevada also has a separate enactment that defines an attempt:

> An act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime. . . .

Nev. Rev. Stat. § 193.330(1). In a situation like this, where both state law and federal law define a crime, the Supreme Court has created a test to determine whether the ACA applies:

> In our view, the ACA's language and its gap-filling purpose taken together indicate that a court must first ask the question that the ACA's language requires: Is the defendant's "act or omission . . . made punishable by any enactment of Congress." 18 U.S.C. § 13(a) (emphasis added). If the answer to this question is "no," that will normally end the matter. The ACA presumably would assimilate the statute. If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.
>
> There are too many different state and federal criminal laws, applicable in too many different kinds of circumstances, bearing too many different relations to other laws, to common-law tradition, and to each other, for a touchstone to provide an automatic general answer to this second question. Still, it seems fairly obvious that the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior-- where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment.

*Lewis v. United States*, 523 U.S. 155, 164-65 (1998) (citations omitted).

The federal robbery statute and the state robbery and attempt statute punish the same wrongful behavior—an attempt to take property from another person by use of force or the threat of force. The inclusion of attempt in the federal robbery statute and Nevada's separate statute defining attempt is only a technical difference. Nevada's law elaborates on whom the use of force or fear of force can be directed, and Nevada's law also elaborates on what a taking by force or fear of force is. However, those definitions arguably are encompassed by the briefer federal robbery statute. If this was a case of a crime against an Indian in Indian country, then the ACA would not appear to apply because 18 U.S.C. § 2111 adequately proscribes the conduct that Berry was charged with.

In addition, the State of Nevada, and not the United States, has jurisdiction over state-law crimes that non-Indians commit in Indian country against non-Indians. *See United States v. McBratney*, 104 U.S. 621, 624 (1882).

The question then is this: is the Fallon Paiute-Shoshone Tribe, as owner of the Fox Peak Station, a person within the meaning of § 2111? If the Tribe is a person under § 2111, then the United States would have exclusive jurisdiction, and the Court need not reach the application of Nevada's robbery statute, Nev. Rev. Stat. § 200.380. If the Tribe is not a person under § 2111, then the store clerk was the victim. The state courts would have jurisdiction because under § 200.380 the Tribe is not a person, and the attempted robbery was a crime that one non-Indian committed against another non-Indian. *See McBratney*, 104 U.S. at 624. By holding that Nev. Rev. Stat. § 41.430 does not apply in this case because the Tribe is not a person under Nev. Rev. Stat. § 200.380, either the Nevada Supreme Court left unstated the multiple steps of federal law that it needed to analyze before determining that state courts had jurisdiction, or the Nevada Supreme Court did not recognize those multiple steps of federal law.[1]

The Nevada Supreme Court continued with its second reason:

> Second, even assuming that NRS 41.430 applies, where the record shows that the offense occurred in Churchill County, appellant had the burden to show that the offense occurred on lands over which the United States has exclusive jurisdiction. *See Pendleton v. State*, 103 Nev. 95, 99, 734 P.2d 693, 695 (1987) ("The defendant has the burden of showing the applicability of negative exceptions in jurisdictional statutes."). Because appellant failed to demonstrate that the district court erred in this regard, we
>
> ORDER the judgment of conviction AFFIRMED.

(ECF No. 9-29 at 3 (Ex. 64 at 2).) Respondents assert that "[w]hether the Nevada Supreme Court correctly concluded that Nev. Rev. Stat. 41.430 afforded the trial court with jurisdiction is thus an issue of state law, which cannot be challenged on federal habeas review." (ECF No. 28 at 6.) Respondents cite multiple cases in support of that proposition.

---

[1] In addition to convicting Berry for attempted robbery, the state district court sentenced Berry as a habitual criminal under Nev. Rev. Stat. § 207.010(1)(b). (ECF No. 8-25 (Ex. 25).) The Court leaves any issue of sentencing out of this discussion because the question now only is whether Berry's claim is cognizable in federal habeas corpus.

8

*See Gasquet v. Lapeyre*, 242 U.S. 367, 368-69 (1917), *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998), *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976), *Nuno Velasco v. Filson*, Case No. 3:13-cv-00431-MMD-VPC, 2017 WL 4011021, at *7 n.5 (D. Nev. Sept. 12, 2017). In each of these cases, the jurisdictional issue was whether a state court had jurisdiction under the state constitution and the state statutes.[2] None of those cases presented the possibility that a federal court might have exclusive jurisdiction.

The case before the Court now is not a dispute over which state court had jurisdiction under state law. This is a dispute as to whether state court or federal court had jurisdiction. Under § 1152 and Supreme Court case law, if the crime occurred in Indian country—which it did—if Berry is not an Indian—which he is not—and if the victim of the crime is an Indian—which remains to be determined in this action—then this court has exclusive jurisdiction. It is the duty of this court to determine whether it has that jurisdiction. Even if, under state law, Berry failed to prove a negative exception to jurisdiction, he has now provided the Court enough information to conclude that it had exclusive jurisdiction over the case, if the victim of the crime was an Indian. The Court cannot now look the other way, hold that it lacked jurisdiction, and hold that the state courts had jurisdiction simply because Berry did not develop the state-court record to the satisfaction of the Nevada Supreme Court. *See Petition of Carmen*, 165 F. Supp. 942, 950-51 (N.D. Cal. 1958), *affirmed sub nom. Dickson v. Carmen*, 270 F.2d 809 (9th Cir. 1959).[3]

---

[2]*Nuno Velasco* was slightly different. Nuno Velasco pleaded guilty in Nevada district court to second degree murder with the use of a deadly weapon for shooting and killing another person. He later argued that his Nevada conviction and sentence were unconstitutional because the killing occurred in California. The Nevada Supreme Court determined that Nevada courts had jurisdiction under Nev. Rev. Stat. § 171.020, which allows for Nevada to have jurisdiction if acts were committed in the state that resulted in the commission of a crime either inside or outside of the state. This Court held that, to the extent that Nuno Velasco was challenging the determination under Nev. Rev. Stat. § 171.020, it was a state-court decision on state law that a federal court could not review. However, Nuno Velasco also challenged the state-court jurisdictional determination under the Constitution of the United States. This Court determined that the state-court decision on that issue was reasonable under 28 U.S.C. § 2254(d). *See* 2017 WL 4011021, at *7.

[3]In the California Superior Court, Carmen was convicted and sentenced to death for murder. *See* 165 F. Supp. at 943. Murder is one of the crimes specified in the Major

A third reason for rejecting Respondents' argument comes from the text of Nev. Rev. Stat. § 41.430 itself. The current version of § 41.430 cites to and implements the federal statutes that allow states to assume jurisdiction over criminal and civil actions in Indian country with the consent of the Indian tribes. The court cannot say that the Nevada Supreme Court ruled on an issue solely of state law when that state law itself implements federal law.

For these reasons, the Court concludes that the sole ground for relief in the amended petition is addressable in federal habeas corpus.

## IV. CONCLUSION

It is therefore ordered that Respondents' motion to dismiss (ECF No. 28) is denied.

It is further ordered that Respondents will have 45 days from the date of entry of this order to file and serve an answer, which must comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner will have 45 days from the date on which the answer is served to file a reply.

DATED THIS 28th day of February 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

Crimes Act, 18 U.S.C. § 1153, that give the United States exclusive jurisdiction to try an Indian accused of one or more specified crimes committed in Indian country. The United States Attorney appeared in the appeal and argued that Carmen was an Indian, that the murder occurred in Indian country, and that the United States had exclusive jurisdiction under the Major Crimes Act. *Id.* at 943-44. The efforts of the United States Attorney and Carmen were unsuccessful because the California Supreme Court concluded that it could not consider new facts that were not in the trial court record. *See id.* at 944. In federal habeas corpus, the district court concluded that Carmen was an Indian, that the crime occurred in Indian country, and that the Major Crimes Act applied. *See id.* at 944-49. More important to the case currently before this Court, the *Carmen* court noted that it not only had the ability, it had the duty to inquire into the jurisdictional issue even if it meant going outside of the state-court record. *See id.* at 949-51. Consequently, even if the Nevada Supreme Court used only Nev. Rev. Stat. § 41.430 and the facts presented to it to determine that it had jurisdiction, this Court is not limited to that law and that record to determine whether jurisdiction is exclusive to federal court.